**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**JENEEN CLARK**                                                                    **PLAINTIFF**

**V.**                                **CASE NO. 4:22-CV-00106-LPR-JTK**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

**RECOMMENDED DISPOSITION**

This Recommended Disposition (Recommendation) has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I. INTRODUCTION

On August 8, 2019, Jeneen Clark applied for disability benefits, alleging disability beginning on April 19, 2017. (Tr. at 10). Her claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing on February 10, 2021, an Administrative Law Judge ("ALJ") denied Clark's application on March 30, 2021. (Tr. at 21). Clark sought review from the Appeals Council, which denied her request. (Tr. at 1). The ALJ's decision thus stands as the final decision of the Commissioner, and Clark now seeks judicial review.

For the reasons stated below, this Court should affirm the decision of the Commissioner.

## II. THE COMMISSIONER'S DECISION[1]

The ALJ found that Clark had not engaged in substantial gainful activity since the alleged onset date of April 19, 2017. (Tr. at 13). At Step Two of the disability evaluation, the ALJ found that Clark had the following severe impairments: obesity, hernia, fibromyalgia, degenerative joint disease, interstitial cystitis, headache, depression, anxiety, and neurodevelopmental disorder. *Id*.

After finding Clark's impairments did not meet or equal a listed impairment, the ALJ determined that she has the residual functional capacity ("RFC") to perform work at the light exertional level, except that: (1) she can only occasionally balance, stoop, kneel, crouch, and crawl; (2) she cannot climb ropes, ladders, or scaffolds; (3) she requires a cane in her dominant upper extremity to ambulate more than 30 feet from a workstation; (4) she requires a sit/stand option; (5) she does not require added breaks but she does require the flexibility to choose when breaks are taken; (6) she retains the capacity to perform work where interpersonal contact is incidental to the work performed, defined as interpersonal contact requiring a limited degree of interaction such as meeting and greeting the public,

---

[1] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

answering simple questions, accepting payment and making change; (7) she can perform work where the complexity of tasks can be learned by demonstration or repetition within 30 days, with few variables and little judgment; and (8) she requires supervision that is simple, direct, and concrete. (Tr. at 13-15).

Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that Clark was unable to perform any of her past relevant work as a retail manager and cosmetologist. (Tr. at 19). The ALJ then found that Clark's RFC would allow her to perform other jobs that exist in significant numbers in the national economy, including the jobs of small parts assembler, mail clerk, and price marker. (Tr. at 19-20). The ALJ concluded, therefore, that Clark was not disabled. (Tr. at 21).

## III. DISCUSSION

### A.    Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.    Clark's Arguments on Appeal

Clark argues that the ALJ's decision is not supported by substantial evidence. She argues that the ALJ erred by: (1) failing to properly evaluate Clark's pain; (2) failing to "meet his burden" to establish Clark's RFC; (3) improperly evaluating and relying on the medical opinions of record; and (4) failing to apply the appropriate standard of proof. Clark also seeks a declaratory judgment stating that "the system used by the Social Security Administration results in decisions that are arbitrary and capricious, fails to provide Constitutionally required due process as required by the Fifth Amendment to the United States Constitution, and fails to provide equal protection as required by the Fourteenth Amendment to the United States Constitution." *Doc. 12 at 35*. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits. The Court addresses each of Clark's arguments in turn.

### Claim 1: Complaints of Pain

Clark asserts that the ALJ improperly assessed the impact of her pain on her ability to function in several ways. First, she contends that the ALJ failed to consider the combined

impact of her chronic pain syndrome and other medical conditions. This argument is meritless. The ALJ acknowledged that Clark had filed for disability "due to a combination of physical and mental symptoms." (Tr. at 16). And after considering the relevant evidence in light of Clark's complaints of pain, he found that Clark's "physical impairments, in combination, limit her to light exertional work." (Tr. at 18). The Court presumes the ALJ acted in conformity with this statement, and no further elaboration was required. *See Wilburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.") (quotation omitted); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (articulation requirements were met when ALJ separately discussed claimant's impairments, complaints of pain, and daily activities before denying claim at Step Four).

Second, Clark asserts that her documented medical conditions "are sufficient to cause the pain she describes." *Doc. 12 at 10*. This argument misses the mark by focusing on Clark's diagnoses, rather than on the functional effects of her pain. Diagnoses alone are not enough to prove a claimant's entitlement to benefits, and "the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011). The ALJ acknowledged that Clark's impairments could reasonably be expected to cause the alleged symptoms. (Tr. at 16). However, he also found that Clark's statements about the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the other evidence of record. *Id*. Clark has not identified reversible error on this point.

Third, Clark argues that agency guidelines required the ALJ to order a consultative exam ("CE") from a pain specialist. *See* Program Operations Manual System ("POMS") § DI 22510.011; *Shontos v. Barnhart*, 328 F.3d 418, 424 (8th Cir. 2003) ("Although POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines."). But an ALJ is not required to obtain a CE, either performed by a specialist or otherwise, unless there is insufficient medical evidence in the record to determine the RFC. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Here, the record was adequately developed with ample medical evidence prepared by Clark's treating physicians, including her treating pain specialists. The ALJ properly considered the factors outlined in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), before determining that Clark's subjective complaints of pain were not fully credible. His decision was based, in part, on "the overall objective findings, extent of care, and frequency of treatment" Clark received for her joint pain, as well as the significant improvement she saw in her interstitial cystitis symptoms by undergoing surgical stretching procedures every six months. (Tr. at 17-18). The ALJ's findings are borne out by the record. No pain CE was necessary.

Clark's fourth and final pain-related argument concerns her diagnosis of chronic pain syndrome, which she alleges the ALJ ignored. Again, Clark misunderstands the import of a mere diagnosis to the disability evaluation. The ALJ considered Clark's complaints of total-body pain in conjunction with her medical records before he discounted the credibility of her subjective complaints for the valid reasons discussed above. Her diagnosis of chronic

pain syndrome does nothing to undermine the ALJ's findings. Clark has failed to demonstrate reversible error.

### Claim 2: RFC Evidence

Clark argues that the ALJ "failed to meet his burden to show by a preponderance of the evidence" that Clark could stand or walk for six hours per workday, as is required to perform work at the light exertional level. *Doc. 12 at 18*. But it is Clark—not the ALJ— who bears the burden of proving her RFC. "The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC. However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal citation omitted) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010)).

Clark contends that the ALJ placed undue emphasis on normal clinical findings while minimizing the evidence supporting her claim. The ALJ was tasked with weighing the evidence, and the record as a whole supported the ALJ's decision to assign more weight to the normal results in the record. *See Grindley v. Kijakazi*, 9 F.4th 622, 629 (8th Cir. 2021). For example, the ALJ discussed evidence related to Clark's degenerative joint disease in her back, knees, and feet. (Tr. at 17). In April 2019, x-rays of Clark's right knee showed mild degenerative joint disease. (Tr. at 1229). After an injury to the knee in November 2020, an MRI showed an effusion, moderate-sized Baker's cyst, and mild to moderate osteoarthritis. (Tr. at 1333-34). Some physical exams in 2018 showed antalgic gait with edema and tenderness of the knee. (Tr. at 1038, 1048). Generally, though, Clark's

physical exams showed full range of motion with normal strength, gait, and sensation, and her knee pain improved with conservative care. (Tr. at 839, 843, 849, 979, 1045, 1264, 1290). And although Clark received a steroid injection for plantar fasciitis, she has not pointed the Court to any other significant treatment specific to her foot pain. (Tr. at 1264-65).

The evidence also shows that Clark underwent surgical stretching procedures to treat her interstitial cystitis in February 2018, September 2018, May 2019, and November 2020. (Tr. at 969-1011, 1324-27). She consistently reported improvement following the procedures, which allowed her to "function in daily life without pain" for several months before her symptoms of pelvic pain and urinary frequency would slowly return. (Tr. at 978). Clark argues that these procedures do not completely resolve the problem. But, again, "that working may cause discomfort does not dictate a finding of disability[.]" *Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022).

After considering all of the relevant evidence, the ALJ accounted for Clark's standing and walking limitations by limiting her to light work that accommodates her need to use a cane, provides her with a sit/stand option, and allows her the flexibility to choose when to take breaks. This finding is supported by substantial evidence. "Despite [Clark]'s dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022). Clark has failed to prove that her RFC should have included any additional limitations beyond those found by the ALJ.

### Claim 3: Medical Opinions

In formulating Clark's RFC, the ALJ considered prior administrative findings from state agency physicians who reviewed Clark's records and found that Clark was capable of performing light unskilled work. (Tr. at 19). Under the relevant regulations, an ALJ is not required to give any specific evidentiary weight to a medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ will evaluate the persuasiveness of a medical opinion in light of several factors, including: (1) how well the medical source supports the opinion with relevant objective medical evidence and supporting explanations; (2) whether the opinion is consistent with the other evidence in the record; (3) the medical source's relationship with the claimant; (4) the medical source's specialization, if any; and (5) other factors that tend to support or contradict the opinion. *Id*. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ is required to articulate how he considered those factors in the evaluation. *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ found that these opinions were persuasive because they were consistent with the treatment record as a whole. (Tr. at 19). However, the Court agrees with Clark that the ALJ failed to explain how he had considered the supportability factor. This failure to comply with the regulation was legal error. *See Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020).

But remand is only warranted if the error was harmful, and Clark bears the burden of demonstrating prejudice by "provid[ing] some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th

Cir. 2012). Clark has not even attempted to make such a showing here. Regardless, as described above, the record contains medical evidence from Clark's treating physicians regarding her ability to function in daily life, and this evidence is consistent with her RFC. Thus, substantial evidence supports the RFC assessment even when the reviewing physicians' reports are excluded. *See Cox v. Astrue*, 495 F.3d 614, 620 n.6 (8th Cir. 2007) (explaining that medical records are sufficient so long as they describe the claimant's "functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment"). The ALJ's failure to address the supportability factor in his written decision is therefore harmless.

Clark separately argues that an RFC must be supported by a medical opinion from a treating physician, but this is simply incorrect. The Eighth Circuit has unequivocally stated that "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence) and *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id*. (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).

### Claim 4: Standard of Proof

Though the Court reviews an ALJ's decision using the "substantial evidence" standard described above, the ALJ's decision is based on the preponderance of the evidence in the administrative record. 20 C.F.R. §§ 404.953(a), 416.1453(a). The ALJ did not

explicitly state that this standard was being used in his decision, and Clark argues that the omission makes it "impossible to really know what standard of proof the ALJ applied." *Doc. 12 at 29.*

This argument is meritless. It is clear from the context of the ALJ's decision that he applied the proper standard. The ALJ did not simply say he was "not persuaded" by Clark's evidence, as she contends. Instead, the ALJ explained:

> The medical evidence shows some basis for the claimant's alleged diffuse joint pains; however, the undersigned is not persuaded that the claimant is as limited as alleged based on the overall objective findings, extent of care, and frequency of treatment. Other than some evidence of painful and swollen joints occasionally, and due to the more recent injury, physical exams generally showed that the claimant had no focal deficits with normal gait, strength, and sensation.

(Tr. at 17). In other words, the ALJ weighed the evidence and found that the evidence detracting from Clark's claim of disability was more convincing than the evidence supporting it. That is precisely what the ALJ was supposed to do. *See Leflar v. Target Corp.*, 57 F.4th 600, 604 (8th Cir. 2023) ("[A] preponderance-of-the-evidence standard involves a straight-up weighing of the evidence to determine which side has the better of the argument.").

Moreover, the Court is entitled to presume that the ALJ properly discharged his duties and applied the proper standards in evaluating Clark's claims. *See Wilburn*, 626 F.3d at 1003-04. Clark has failed to show error on this basis.

### Declaratory Judgment

Finally, Clark has raised a number of generalized grievances about the administrative process for determining disability. She argues that the regulations and

policies governing the benefits adjudication process are vague and leave too much discretion to individual ALJs. She asks that the Court enter a judgment declaring that "the system used by the Social Security Administration results in decisions that are arbitrary and capricious, fails to provide [due process], and fails to provide equal protection" to claimants.

Congress has granted the Commissioner exceptionally broad rulemaking authority "to regulate and provide for the nature and extent of the proofs and evidence" required to establish a claimant's right to benefits. 42 U.S.C. § 405(a); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). The Court's review of these regulations is limited to determining whether they are arbitrary or capricious and whether they exceed the Commissioner's authority. *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Clark has not identified any specific regulations in support of her "vagueness" arguments. The only (somewhat) concrete example she provides is the agency's use (generally) of the terms "mild," "moderate," "marked," and "extreme," which she says are undefined. But those terms *are* defined in the Listings, and the regulations describe how an ALJ applies them in the decision-making process. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2); 20 C.F.R. §§ 404.1520a(c)–(d), 416.920a(c)–(d).

To support her claim that the entire evaluation process is arbitrary and treats similarly situated claimants unequally, she cites to a 2017 report by the U.S. Government Accountability Office about how claim allowance rates vary among ALJs. (Tr. at 417-500). But Clark fails to explain how this evidence relates to her personally, or to the ALJ's decision denying her benefits. She has not alleged that she herself was treated unequally,

or that she was somehow denied due process. Clark does not identify any particularized injury she has suffered, or any causal relationship between the injury and the challenged conduct. Thus, she cannot show a likelihood that her injury would be redressed by the declaratory relief she seeks. *See Regional Home Health Care, Inc. v. Becerra*, 19 F.4th 1043, 1044–45 (8th Cir. 2021) ("In all civil litigation, the judicial decree is not the end but the means. . . . The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." (emphasis in original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987))). No further consideration of these claims is warranted.

## IV.  CONCLUSION

Substantial evidence supports the Commissioner's decision that Clark was not disabled. The Court should affirm the Commissioner's decision and enter judgment in favor of the Defendant.

IT IS SO ORDERED this 28th day of March 2023.

_____
UNITED STATES MAGISTRATE JUDGE